UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DANIELLE C.,                )
                            )
            Plaintiff       )
                            )
v.                          )    No. 2:18-cv-00228-DBH
                            )
NANCY A. BERRYHILL,         )
Acting Commissioner of Social Security, )
                            )
            Defendant       )

## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff, proceeding *pro se*, seeks remand on the bases that the ALJ erred in (i) failing to distinguish between symptoms from her degenerative disc disease ("DDD") and her myofascial pain syndrome, (ii) finding that she had experienced almost 100 percent relief from trigger point injections, (iii) relying on her activities of daily living, and (iv) relying on her volunteer driving work. *See* [Statement of Errors] (ECF No. 25). I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

relevant part, that the plaintiff had the severe impairment of myofascial pain syndrome, Finding 2, Record at 17; that she had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except that she could occasionally climb ladders/scaffolds/ropes and occasionally stoop, Finding 4, *id.* at 21; that, considering her age (23 years old, defined as a younger individual, on the date she filed her application for SSI benefits, November 3, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id.* at 24; and that she, therefore, had not been disabled from November 3, 2015, the date her SSI application was filed, through the date of the decision, July 11, 2017, Finding 10, *id.* at 25. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the

commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Overlap Between DDD, Myofascial Pain Syndrome

The plaintiff first challenges the ALJ's finding that, "even if [her] alleged DDD was a medically determinable impairment, any symptoms resulting from this condition would overlap with her severe impairment of myofascial pain syndrome." Statement of Errors at [1]; Record at 18. She asserts that the ALJ erred in failing to differentiate between the symptoms caused by her DDD and those caused by her myofascial pain syndrome. *See* Statement of Errors at [1]. Nonetheless, as the commissioner notes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 30) at 2-5, the ALJ concluded that the plaintiff's alleged DDD was not a medically determinable impairment, *see* Record at 18.

"An individual's symptoms . . . will not be found to affect the ability to perform work-related activities . . . unless medical signs or laboratory findings show a medically determinable impairment is present." Social Security Ruling 16-3p ("SSR 16-3p"), reprinted in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2018), at 666. Thus, "[i]n the absence of a medically determinable impairment, a claimant's symptoms rightfully are ignored[.]" *Blackmore ex rel. JS v. Astrue*, Civil No. 09-385-P-S, 2010 WL 2674594, at *3 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010).

The ALJ's finding that the plaintiff did not have a medically determinable DDD impairment is supported by substantial evidence. She explained that she did not credit the October 2015 DDD diagnosis of Jerry Lin, D.O., when Dr. Lin "note[d] that the lumbar MRI done in 2014 showed normal findings[,]" "did not provide a detailed analysis of the [plaintiff]'s lumbar condition," and did not "cite to objective testing to support his diagnosis." Record at 18. And,

she relied on the opinions of two agency nonexamining consultants, Benjamin Weinberg, M.D., and David Camenga, M.D., both of whom found no medically determinable DDD impairment, citing normal lumbar spine x-rays and a normal examination on January 20, 2016. *See id*. at 23, 73-75, 84-87. No more was required.

Remand, accordingly, is unwarranted on the basis of the first point of error.

### B. Degree of Relief from Injection Therapy

The plaintiff next challenges the ALJ's finding that "[e]xam notes show that [she] has experienced over 90% pain relief with trigger point injections." Statement of Errors at [1]; Record at 22 (citation omitted). She asserts that the relief was closer to 50 percent and that, even with trigger point therapy, she still had severe issues. *See* Statement of Errors at [1]. The commissioner acknowledges that the plaintiff consistently reported experiencing at least 50 percent relief. *See* Opposition at 9. However, she points out that, in October 2014, the plaintiff reported having had over 80 percent relief from her prior injection, and in June 2015, just before her alleged onset date of disability, she reported "over 90% pain relief with trigger point injections." *Id*. (citing Record at 344; quoting *id*. at 337). In the circumstances, as the commissioner argues, "[t]he ALJ reasonably considered that [the] [p]laintiff received pain relief from trigger point injection therapy based on the evidence that injections provided relief that at times was 80% or 90%, and was consistently at least 50%." *Id*. at 10 (citations omitted).

Remand, accordingly, is unwarranted on the basis of this second point of error.

### C. Activities of Daily Living

In assessing the plaintiff's RFC and evaluating her subjective statements, including her allegations that she could stand for only 10 minutes before needing to lie down and was in constant, severe pain, the ALJ took into account her activities of daily living, stating:

4

> As for the [plaintiff]'s alleged functional difficulties including standing, sitting, walking, reaching, and climbing, the record shows that she is capable of completing her activities of daily living. The [plaintiff] reported that in addition to her volunteer driving duties, she takes care of her daughter. "I take care of my daughter. I do everything for her. I am a single mother, I take care of her by myself." She reported that she cooks meals, does the laundry, vacuums, cleans the house, and goes shopping on a daily basis. [She] reported that she takes her daughter to the park, beach, and to visit friends.

Record at 22 (citations omitted).

The plaintiff complains that, in relying on these activities, "what they don[']t see behind close[d] doors is the pain level of how I feel on a daily basis" and that she "struggle[s] with all the pain" that she has. Statement of Errors at [2]. Nonetheless, as the commissioner observes, *see* Opposition at 11, an RFC finding describes "the most" that an individual can still do despite any limitations from her impairments, not the least, 20 C.F.R. § 416.945(a)(1). "[W]hile a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an [ALJ] properly may take such activities into consideration in assessing . . . a claimant's allegations." *Rucker v. Colvin*, Civil No. 2:13-CV-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) (citations omitted).

The ALJ did so here. She reasonably concluded that the plaintiff's ability to perform a wide variety of activities of daily living cut against a finding that she had disabling functional limitations. And, she did not rely solely on activities of daily living in so concluding. She also took into account the objective medical evidence, the plaintiff's treatment history, and the expert opinions of record, resolving conflicts in favor of according "great weight" to the RFC assessments of Drs. Weinberg and Camenga and "very little weight" to that of treating physician Karyn Woelflein, M.D. Record at 23. The plaintiff identifies no error in the ALJ's consideration of those additional factors. *See* Statement of Errors.

Remand, accordingly, is unwarranted on the basis of this third point of error.

5

### D. Performance of Volunteer Driving Job

In assessing the plaintiff's RFC and evaluating her subjective statements, the ALJ also relied on her work as a volunteer driver, explaining:

> [The plaintiff] testified that she has worked as a volunteer driver for Western Maine Transportation Services for the last 3 years. [She] reported that her schedule varies, but she previously worked up to 8 hours in a day. Her employer recently reduced her hours due to lack of work, so she now works 2-3 hours per day and 2-3 days per week. The [plaintiff]'s volunteer responsibilities included transporting elderly clients to their appointments and lifting their assistive devices, such as a walker, into her vehicle. The [plaintiff] reported in her Adult Function Report[] that she would get her daughter ready for school, "drive most of the day", and then pick up her daughter, feed her, and put her to bed.

Record at 22 (citations omitted); *see also id*. at 17 (finding that volunteer driving job, for which the plaintiff received no pay, was not substantial gainful activity), 39-42 (plaintiff's hearing testimony).[2]

The plaintiff asserts that she performed the volunteer driving job only because she was "told to" do so in order to receive Temporary Assistance for Needy Families ("TANF") benefits and that she struggled to perform the job and had to lie down afterward to alleviate her pain. Statement of Errors at [2].

Nonetheless, for the same reasons discussed above, the ALJ properly took into account the fact that the plaintiff performed what, on occasion, amounted to a full-time job, with her hours reduced only for lack of work.

Remand, accordingly, is unwarranted on the basis of this fourth, and final, point of error.

---

[2] At oral argument, the plaintiff objected that her hearing testimony had been misheard, representing that she testified that she worked four to eight hours a day at the volunteer driving job. Oral argument is not an opportunity to provide fresh testimony. In any event, the purported transcription error is immaterial. Even if the plaintiff testified that she worked from four to eight hours a day at the job, the ALJ still supportably found that she worked up to eight hours a day.

### E. Proffer of New Evidence

At hearing, the plaintiff offered to provide new evidence from Dr. Woelflein bearing on an asserted worsening of her condition since the date of the ALJ's decision. Counsel for the commissioner objected to the admission of that evidence on the basis of its irrelevance to the time period at issue in the ALJ's decision (November 3, 2015, through July 11, 2017), and I sustained her objection. *See, e.g., Tammy Lynn W.N. v. Berryhill*, No. 1:18-cv-00113-LEW, 2019 WL 276844, at *2 (D. Me. Jan. 20, 2019) (rec. dec., *aff'd* Feb. 19, 2019) (court may order that additional evidence be taken before commissioner only upon a showing that, among other things, it is "material to the issue of the claimant's condition during the time period for which benefits were denied") (citation and internal quotation marks omitted). Nonetheless, as I advised the plaintiff at hearing, if she feels that her condition has worsened, she is free to file a new application for SSI benefits.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of May, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge